```
 1                 IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLORADO
 2
     Criminal Action No. 12-cr-00010-MSK
 3
     UNITED STATES OF AMERICA,
 4
          Plaintiff,
 5
     vs.
 6
     GEORGE H. ASKEW,
 7
          Defendant.
 8
     _____
 9
                           REPORTER'S TRANSCRIPT
10                        (Sentencing Hearing:  Order)

11   _____

12          Proceedings before the HONORABLE MARCIA S. KRIEGER,

13   Judge, United States District Court for the District of

14   Colorado, commencing at 11:05 a.m., on the 18th day of

15   September, 2012, in Courtroom 901A, United States Courthouse,

16   Denver, Colorado.

17                              APPEARANCES

18          GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

19   Suite 700, Denver, Colorado, 80202, appearing for the

20   plaintiff.

21          EDWARD HARRIS, Assistant Federal Public Defender, 633

22   17th Street, 10th Floor, Denver, Colorado, 80202, appearing for

23   the defendant.

24              THERESE LINDBLOM, Official Reporter
                901 19th Street, Denver, Colorado 80294
25         Proceedings Reported by Mechanical Stenography
                Transcription Produced via Computer
```

1         (The following proceedings were had and entered of
2    record after the Court heard the arguments of counsel and
3    statement of defendant:)
4         *THE COURT:*  I'll announce the sentence I intend to
5    impose.  And if there is anything about my reasoning that
6    catches counsel by surprise or addresses an issue that you
7    haven't had an opportunity to address, I invite you to request
8    a continuance.
9         Imposition of a sentence in a federal criminal case is
10   governed by a number of statutes.  But the umbrella statute for
11   sentencing is 18 U.S.C. Section 3553.
12        In imposing sentence in this case, as in every case,
13   I'm required to consider the objectives and the factors that
14   are set forth in that statute.  The statute requires that the
15   sentence be sufficient but not greater than necessary to
16   satisfy particular objectives; the sentence must reflect the
17   seriousness of the offense; promote respect for the law;
18   provide just punishment; adequately deter criminal conduct;
19   protect the public from further crimes by the defendant; and
20   provide the defendant with needed educational or vocational
21   training, medical care, or other correctional treatment in the
22   most effective manner.
23        To fashion a sentence that meets these objectives, the
24   statute tells me what factors to consider:  The nature and
25   circumstances of the offense, the history and characteristics

1  of the defendant, the kinds of sentences that are available,
2  the sentence prescribed by the federal sentencing guidelines,
3  the need to avoid unwarranted sentence disparities among
4  defendants with similar records found guilty of similar
5  conduct.
6        Now, at the beginning of this hearing I identified
7  those documents that I had studied in preparation for the
8  hearing, confirmed with counsel that they and Mr. Askew had had
9  an opportunity to review those, confirmed that there was no
10 dispute as to the factual contents of the presentence report
11 and no dispute as to the calculation of the sentence under the
12 federal sentencing guidelines.  That is where we start.  I also
13 confirmed that there was no additional documents that I should
14 be considering.
15        So turning to the calculation under the federal
16 sentencing guidelines, I find as follows:
17        There are two counts that Mr. Askew is being sentenced
18 for, possession with intent to distribute more than 28 grams of
19 crack cocaine and being a prohibited person in possession of a
20 firearm and aiding and abetting.
21        These two counts are grouped under the guidelines
22 pursuant to Section 3D1.2(c).  And pursuant to Section 3D1.3,
23 the offense guideline which produces the highest offense level
24 is used.  Thus, the guideline for Section 2D1.1 is applied
25 here.

4

1        The Base Offense Level for violation of 21 U.S.C.
2   Section 841(a)(1) and (b)(1)(B) is Section 2D1.1.  Because the
3   type and the amount of drugs involved was 28.167 grams of
4   cocaine base, the base offense level is 26.  Then there are two
5   additional levels added as specific offense characteristics
6   pursuant to Section 2D1.1(b)(1); this is because Mr. Askew
7   possessed a firearm.  There are two additional levels that are
8   added pursuant to Section 2D1.2(a)(1) because the offense took
9   place within 1,000 feet of a Denver Public School District
10  elementary school.  This results in an Adjusted Offense Level
11  of 30.
12       Then there is a downward adjustment for acceptance of
13  responsibility.  And Mr. Askew gets the maximum reduction for
14  acceptance of responsibility under the sentencing guidelines.
15  That is a three-level reduction, and it is imposed because the
16  provisions of Section 3E1.1(a) and (b) have been satisfied.  So
17  the Total Offense Level is 27.
18       The other component in calculating a sentence under
19  the federal sentencing guidelines is the calculation of
20  criminal history.  The total number of criminal history points
21  here is 14; and that puts Mr. Askew in the highest criminal
22  history category in the federal system, Category VI.
23       Now, that doesn't really summarize adequately, in my
24  view, the nature of the criminal history, because there are
25  multiple convictions for which no points have been assigned,

 1  one occurring in 1994, '95, '96 -- actually, three in '96.
 2  '97, two, three, in '97.  '98, the first time any points are
 3  assigned is for a 1998 conviction of distribution of a Schedule
 4  III controlled substance.  A conviction in 1998, which was a
 5  driving conviction for which no points are assigned and a
 6  domestic violence criminal mischief conviction for which no
 7  points are assigned.  There is a theft conviction in 1998 for
 8  which 2 points are assigned, but an operation of a motor
 9  vehicle under restraint for which no points are assigned,
10  driving under financial suspension for which no points are
11  assigned.
12          Then in 1999 there is another conviction regarding
13  controlled substances.  Here, it's a 3-point conviction for
14  attempted conspiracy to possess a Schedule II controlled
15  substance.  And in 1999, another felony conviction with 3
16  points for driving after revocation.
17          But then in 2000, a conviction for trespass for which
18  no points are assigned and false information for which no
19  points are assigned.
20          In 2006, again, there is a conviction for possession
21  of a controlled substance for which 1 point is assigned.  And
22  at the time of the instant offense, the defendant was under a
23  criminal justice sentence in the 2006 cases, and that results
24  in an additional 2 points.
25          With a Criminal History Category of VI and an offense

1   level of 7, for Count 1, the guidelines recommend incarceration
2   of 130 to 162 months.  For Count 2, they recommend
3   incarceration of 120 months.  The supervised release term
4   recommended under the guidelines is 4 years on Count 1 and 1 to
5   3 years on Count 2.  He is not eligible for probation.  The
6   fine for these counts recommended under the guidelines is
7   $12,500 to $2,250,000.  And there is a special assessment of
8   $100 for each count.

9   There is no request for a departure under the
10  guidelines; but Mr. Askew has asked for what is called a
11  statutory sentence, or a variant sentence.  What that is, is a
12  request for a non-guideline sentence.  And in particular, he's
13  asked for a non-guideline sentence of 60 months of
14  incarceration, less than half of the time recommended under
15  Count -- on Count 2 and less than half of the time recommended
16  on Count 1.

17  The reasons that he has given for that is that he has
18  changed his behavior, that he's successfully participated in a
19  drug rehabilitation program, including a drug court, in 2009,
20  the same time that the instance offense occurred, and that
21  since then he has had no violations of the law.

22  The letters that have been submitted on his behalf
23  include comments by friends and relatives indicating that he
24  has changed his behavior.  He tells me that he understands that
25  he has obligations to his family and he has changed his outlook

1   as well as his behavior.

2       The Government opposes the imposition of a variant
3   sentence, noting that the two counts upon which he has been
4   convicted in this case are serious, that they reflect an
5   extended pattern of behavior over a long period of time, and
6   that he has garnered a significant criminal record.

7       From reviewing that criminal record, I note one fact
8   that no one has addressed, and that is that there have been
9   gaps in the criminal record of some significant time periods
10  before this where Mr. Askew was not involved in criminal
11  behavior. And the greatest of these is between the year
12  2000 and 2006, a six-year period in which there were no
13  convictions.

14      Now, that's twice as long as the three-year period
15  that has passed since the behavior in 2009. But the six-year
16  period was followed by a conviction for being in possession of
17  a controlled substance and then these charges for behavior in
18  2009, several things that are important to note in evaluating
19  the request for a variant sentence and for determining what
20  sentence is appropriate under the statute, 18 U.S.C. Section
21  3553.

22      The role of the Court in imposing sentence is not to
23  judge the person. I'm not making a determination as to whether
24  Mr. Askew is a good person or not; I'm not deciding whether
25  he's a good father or not; I'm not deciding whether or not he

1  has good relationships with his family.  And it's apparent that
2  there are lots of people who love him and see his very fine
3  qualities.  This isn't about that.  This is about behavior,
4  about conduct, and about being responsible and accountable for
5  that conduct.
6          Therefore, I look at what conduct occurred and all of
7  the factors that the statute tells me to consider.  I'm not
8  free to grant mercy, because mercy has nothing to do with the
9  role of the Court in imposing sentence.  The sentence is
10 imposed to reflect the seriousness of the offense, to promote
11 respect for law, to deter criminal conduct, to protect the
12 public from further crimes by the defendant.
13         Now, I congratulate Mr. Askew on his three years of
14 sobriety.  It's a lot of work, it requires a real life-style
15 change, and he's done a good job insofar as the information in
16 the presentence report reveals.  But it doesn't change his
17 conduct.  It doesn't change the seriousness of the offense or
18 any of the objectives that the sentence is to serve, with the
19 exception of one.  And that is the need to protect the public
20 from further crimes by the defendant.
21         Because Mr. Askew has had an abatement of illegal
22 behavior for a period of six years before and then returned to
23 illegal behavior, the fact that he has been sober and
24 responsible and engaged in lawful behavior for a period of
25 three years I do not find to be persuasive as to the likelihood

1   of him continuing in a law-abiding life-style.  I see no reason
2   to reduce a sentence because of that thee-year period.  To me,
3   it reflects the consistency of the criminal record I see thus
4   far.  And as a consequence, I do not intend to impose a variant
5   sentence in this case.
6           Instead, I intend to impose, having considered the
7   sentencing factors and the sentencing objectives, the following
8   sentence:  A special assessment of $200, $100 for each count.
9   That's mandated by statute.  I do not intend to impose a fine
10  because I find that Mr. Askew lacks the ability to pay a fine.
11  On Count 1, I intend to impose a bottom-of-the-guideline
12  sentence of 130 months in prison.  And on Count 2, I intend to
13  impose a 120-month sentence of imprisonment, both terms of
14  imprisonment to run concurrently.  I intend to impose a
15  supervised release period of 4 years on Count 1 and 3 years on
16  Count 2.  But by operation of statute, these run concurrently
17  as well.
18          Is there any need for clarification, for further
19  explanation, or request for a continuance?
20          *MR. TILL:*  Not from the Government, Your Honor.
21          *MR. HARRIS:*  No, Your Honor.
22          Just one observation factually.  I believe that
23  through some period between 2000 and 2006, he was incarcerated
24  on a four-year sentence.  So to the extent that there was that
25  six-year gap in cases, some of it was during a period of

 1  incarceration.  And I would maintain that a three-year period
 2  is still significant.
 3              *THE COURT:*  Thank you.
 4              I'll treat that as a motion for reconsideration, but I
 5  deny the reconsideration.  Even if Mr. Askew was incarcerated
 6  for part of that period of time, he gets good credit for the
 7  fact that he didn't engage in any other crime for the remainder
 8  of that time.  And I still remain unconvinced that a period of
 9  three years of sobriety justifies a variant sentence of less
10  than half of what the guideline requires.
11              Ms. Glover, would you escort the children out of the
12  courtroom.  And those of you who are emotionally upset, would
13  you please excuse yourselves from the courtroom as well.
14              Having considered the provisions of 18 U.S.C. Section
15  3553, both the sentencing objectives and the sentencing
16  factors, it is the judgment of the Court that the defendant,
17  George H. Askew, be committed to the custody of the Bureau of
18  Prisons to be imprisoned for a term of 130 months as to Count 1
19  and a term of 120 months as to Count 2, both counts to run
20  concurrently.
21              Upon release from imprisonment, he'll be placed on
22  supervised release for a term of 4 years on Count 1 and 3 years
23  on Count 2, both counts to run concurrently.
24              Within 72 hours of release from the custody of the
25  Bureau of Prisons, he'll report in person to the probation

```
 1   office in the district to which he is released.  While on
 2   supervised release, he'll not commit another federal, state, or
 3   local crime.  He'll not possess a firearm as defined in 18
 4   U.S.C. Section 921, and he'll comply with the standard
 5   conditions that have been adopted by the Court.  He'll not
 6   possess a controlled substance; he'll refrain from any unlawful
 7   use of a controlled substance; he'll submit to at least one
 8   drug test within 15 days of release on supervised release and
 9   two periodic tests thereafter; he'll cooperate in the
10   collection of DNA as directed by the probation officer.
11            And there are special -- a special condition that I
12   will impose, because it is reasonably related to the factors
13   enumerated and 18 U.S.C. Section 3553 and 3583(d).  He will
14   participate in and successfully complete a program of testing
15   and/or treatment for substance abuse as required by the
16   probation officer until such time as he is released from the
17   program by the probation officer.  He'll abstain from the use
18   of alcohol or other intoxicants during the course of treatment.
19   And to the extent that he is able to and directed to by the
20   probation officer, he will pay for the cost of treatment.
21            No fine is imposed for the reasons specified.
22   However, the statute mandates the payment of a special
23   assessment of $200; and that is due and payable immediately.
24            Mr. Pluss -- Mr. Harris, there was a mention in the
25   presentence report that Mr. Askew would like to participate in
```

1  the RDAP program.  Do you wish a recommendation for that?
2          *MR. HARRIS:*  Yes, Your Honor.
3          *THE COURT:*  I would recommend that to the extent that
4  Mr. Askew is desirous of participating in the RDAP program,
5  that he be authorized to do so.  And with regard to the request
6  for an assignment or recommendation of assignment to F.C.I.
7  Englewood, I decline the request.  I do so for several reasons.
8          First of all, there is a belief among many defendants
9  and their families that if the Court recommends location at a
10 particular facility, that's likely to happen.  I have to tell
11 you, it's not.  In fact, in the situations where there are
12 recommendations by the Court, the Bureau of Prisons honors less
13 than 50 percent of the time.  So I do not wish to create any
14 expectation that a particular facility would be selected by the
15 Bureau of Prisons.
16         And, indeed, the Bureau of Prisons gets to select the
17 appropriate facility.  They do so based upon a number of
18 factors, and I have no doubt that Mr. Harris has explained
19 these to Mr. Askew.  But among them are included the proximity
20 to family and the proximity to small children.  I would
21 recommend to Mr. Askew that he be sure to express his
22 preference for that, if that is important to him.
23         In addition, there are differing rehabilitation
24 programs offered at different facilities.  And being advised of
25 those particular programs and which would be to Mr. Askew's

1  best interests may help drive the decision making as to what
2  facility he's signed to as well.
3   And finally, there are security concerns which may or
4  may not be applicable, given Mr. Askew's history and the nature
5  of this case.  This court is not privy to that, and therefore,
6  cannot make that assessment.  That is one of the primary
7  reasons why the Bureau of Prisons has the absolute discretion
8  to make the assignment that it does.
9   Mr. Askew, I advise you of your right to appeal this
10 sentence.  If you desire to appeal, a Notice of Appeal must be
11 filed with the Clerk of the Court within 14 days after entry of
12 judgment, or you lose your right to appeal.  Now, ordinarily,
13 Mr. Harris would file that Notice of Appeal for you.  But if
14 for some reason he's unable to or he's unwilling to do so and
15 you want to appeal, you may request and I will direct the Clerk
16 of the Court to file a Notice of Appeal on your behalf.
17  Is there any further business to bring before the
18 Court?
19  *MR. TILL:*  Not from the Government, Your Honor.
20  *MR. HARRIS:*  No, Your Honor.
21  *THE COURT:*  Thank you, then, Mr. Till.  Thank you,
22 Mr. Harris.  Thank you to our probation officer and our marshal
23 staff.  Mr. Askew will be remanded to the care and custody of
24 the United States Marshal.  And that will conclude this
25 hearing.

```
 1            (Recess at 11:48 a.m.)

 2                     REPORTER'S CERTIFICATE

 3

 4       I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.
 5

 6       Dated at Denver, Colorado, this 18th day of September,

 7  2012.

 8                                   s/Therese Lindblom

 9                                   _____
                                     Therese Lindblom,CSR,RMR,CRR
10
```