ATTACHMENT A

1      IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
2
Criminal Action No. 12-cr-00010-MSK
3
UNITED STATES OF AMERICA,
4
     Plaintiff,
5
vs.
6
GEORGE H. ASKEW,
7
     Defendant.
8
_____
9
                    **REPORTER'S TRANSCRIPT**
10                   SENTENCING HEARING

11   _____

12         Proceedings before the HONORABLE MARCIA S. KRIEGER,

13   Judge, United States District Court for the District of

14   Colorado, commencing at 11:05 a.m., on the 18th day of

15   September, 2012, in Courtroom 901A, United States Courthouse,

16   Denver, Colorado.

17                        **APPEARANCES**

18         GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

19   Suite 700, Denver, Colorado, 80202, appearing for the

20   plaintiff.

21         EDWARD HARRIS, Assistant Federal Public Defender, 633

22   17th Street, 10th Floor, Denver, Colorado, 80202, appearing for

23   the defendant.

24           THERESE LINDBLOM, Official Reporter
              901 19th Street, Denver, Colorado 80294
25         Proceedings Reported by Mechanical Stenography
              Transcription Produced via Computer

ATTACHMENT A

1           P R O C E E D I N G S

2           *THE COURT:*  Court is convened today in Case No.

3    12-cr-10, which is encaptioned for purposes of today's hearing

4    as the United States of America v. George H. Askew.  The matter

5    is set down for sentencing.

6           Could I have entries of appearance, please.

7           *MR. TILL:*  Good morning, Your Honor.  Your Honor, I'm

8    Guy Till.  I'm an assistant U.S. attorney representing the

9    Government.

10          *THE COURT:*  Good morning and welcome.

11          *MR. TILL:*  Thank you.

12          *MR. HARRIS:*  Good morning, Your Honor.  Edward Harris

13   appearing with Mr. Askew.

14          *THE COURT:*  Good morning and welcome.

15          Are you all ready to proceed?

16          *MR. TILL:*  Yes, Your Honor.

17          *MR. HARRIS:*  Yes, Your Honor.

18          *THE COURT:*  Thank you.

19          Mr. Harris, would you and your client please approach

20   the lectern.

21          This matter is before the Court for purposes of

22   sentencing.  The record reflects that the defendant was charged

23   in a 32-count Indictment filed with this Court on January 9,

24   2012.  He was charged in Count 1 with possession with intent to

25   distribute more than 28 grams of crack cocaine in violation of

ATTACHMENT A

1  21 U.S.C. Section 841(a)(1) and (b)(1)(B); in Count 2 with

2  being a prohibited person in possession of a firearm, aiding

3  and abetting, in violation of 18 U.S.C. Section 922(g)(1),

4  924(a)(2) and 2; in Count 3, with using a residence for the

5  purpose of distributing a controlled substance in violation of

6  21 U.S.C. Section 856(a)(1) and (2) and (b); in Count 4 with

7  possession of a firearm in furtherance of a drug trafficking

8  felony violation of 18 U.S.C. Section 924(c); in Count 32 with

9  using and maintaining drug-involved premises, aiding and

10  abetting, in violation of 18 U.S.C. Section 856(a)(1) and (2)

11  and (b) and 2 of Title 18.

12          On February 26, 2012 a 38-count First Superseding

13  Indictment was filed with the Court, found at Docket No. 180,

14  and it charged the defendant in the same counts as the original

15  Indictment, but added another, Count 33, distribution near

16  schools in violation of 21 U.S.C. Section 860.

17          On June 11, 2012, pursuant to the terms of a written

18  plea agreement, the defendant changed his prior pleas of not

19  guilty as follows:  He changed his plea to a plea of guilty of

20  Counts 1 and 2 of the original Indictment.  I accepted his

21  plea, and he was adjudged guilty on those charges.  The

22  Government orally moved to dismiss the remaining counts of the

23  original Indictment and all counts in the First Superseding

24  Indictment.  I granted that motion, but stayed the effect of

25  the order until the time of sentencing.

ATTACHMENT A

1          He's now before the Court for purposes of sentencing.

2    And in preparation for this hearing, I've had the opportunity

3    to review and consider a number of documents in the record.

4    Docket No. 600, which was the initial presentence report;

5    Docket No. 609, which was the defendant's sentencing statement

6    and request for a variant sentence; Docket No. 619, the

7    response of the United States to the defendant's motion; Docket

8    620, the final presentence report; and Docket 621, an addendum

9    to that report.

10          Counsel, have you and Mr. Askew had adequate

11    opportunity to review and consider these documents?

12          *MR. HARRIS:*  Yes, Your Honor.

13          *THE COURT:*  Mr. Till.

14          *MR. TILL:*  Yes, Your Honor.

15          *THE COURT:*  Thank you.  Are there any other documents

16    I should be considering?

17          *MR. TILL:*  Not from the Government, Your Honor.

18          *MR. HARRIS:*  No, Your Honor.

19          *THE COURT:*  Thank you.

20          Any dispute as to the factual contents of the

21    presentence report?

22          *MR. TILL:*  Not from the Government, Your Honor.

23          *MR. HARRIS:*  No.

24          *THE COURT:*  Any dispute as to the calculation of the

25    sentence under the federal sentencing guidelines as set forth

ATTACHMENT A

1    in the presentence report?

2             *MR. TILL:*  Not from the Government, Your Honor.

3             *MR. HARRIS:*  No calculation dispute.

4             *THE COURT:*  Thank you.  Any request for a departure

5    pursuant to the guidelines?

6             *MR. TILL:*  Not from the Government, Your Honor.

7             *MR. HARRIS:*  No, not a departure, Your Honor.

8             *THE COURT:*  Thank you.

9             And I understand the defense is moving for a variant

10   or statutory sentence; is that correct?

11            *MR. HARRIS:*  Yes, Your Honor.

12            *THE COURT:*  Would you please make that motion.

13            *MR. HARRIS:*  Thank you, Your Honor.

14            We have filed a request for a statutory sentence of --

15   the title of that document being Defendant's Sentencing

16   Statement and Request for Statutory Sentence of 60 Months.  The

17   gist of that motion relies primarily on history and

18   characteristics and argues that Mr. Askew's history and

19   characteristics warrant such a below-guideline sentence.  The

20   motion also refers to other 3553 factors.

21            To elaborate on all of that, what I would offer you

22   today is the following:

23            First, with respect to the case overall, just by way

24   of overview, it's not a unique case in the sense that the Court

25   has never, I think, before seen something like this, but it is

6

ATTACHMENT A

1    an unusual case.  And what makes it unusual, I think, is that

2    it's not every day that an individual comes before the Court

3    charged with a crime that occurred many years before, and

4    particularly in this context, a drug or a gun context.  It

5    happens more often in a white collar context, I think.  But

6    it's not every day that that occurs.  And certainly it is a

7    rare instance where it occurs and someone argues that they've

8    changed and has some meaningful proof over the course of time,

9    in the lapse of time, that that change has occurred.

10          It's easy to say that a person has changed.  It's easy

11   for a defendant or for me to come before you and say, look,

12   I've changed; look, he's changed.  I think the proof of the

13   pudding there is in the eating.  And here the proof of that

14   pudding is that in the three years, approximately, between the

15   events in this case to which he has pled guilty and the time of

16   his arrest, he has had not only no new arrests, but no moving

17   violations, really, nothing.  He has had no further use of

18   drugs.  He's cleaned up his act.  And that's something that has

19   been noticed by family.  And you've seen the letters.  And I

20   would simply point out what you can see sitting from where you

21   are, he's got a large outpouring of support from family

22   members, who are sitting here today.  So they've noticed the

23   change.

24          I think April, his wife, has spoken eloquently to that

25   change.  Time has changed him; circumstances have changed him.

ATTACHMENT A

1   And there is no question that at the time of these events, he

2   was not stepping up to his responsibilities, either as a

3   citizen or a good father.  While he may have done some things

4   that were good, he may have been good to his kids, it wasn't

5   good fathering to commit this crime or commit it in the manner

6   in which it occurred.

7           But significantly, in the three years that have

8   passed, he's done his best to avoid the kind of situations that

9   he was in before, done his best to not use drugs.  And there is

10  some small irony here that cuts both ways, but he was on

11  probation at the time of this offense.  To his detriment, he

12  committed the offense.  And I'm not saying he was like the

13  perfect probationer; but to his credit, but for committing this

14  offense, he completed the rest of that probation

15  satisfactorily, including not using drugs further, and hasn't

16  used drugs further in the intervening time, a fact that he

17  would tell you, a fact that I think is corroborated by his lack

18  of involvement with the criminal justice system.

19          If you look at the pattern of involvement before this,

20  I think you would probably characterize it as deplorable.

21  However, it stopped.  I mean, it didn't just taper down; it

22  stopped.  And that is, I think, significant.

23          So with respect to history and characteristics, I do

24  believe he's deserving of consideration for a below guideline

25  sentence, because it's out of the heartland of cases.

8

ATTACHMENT A

1    With respect to other factors, the change that he has

2  singularly effected in himself cuts toward those factors as

3  well.

4    First, with respect to rehabilitation, you know,

5  candidly, I don't know what amount the rehabilitation occurs

6  within the BOP.  Maybe there is some; maybe there isn't.  But

7  in this case, I don't know what more he can do to rehabilitate

8  himself that can't be accomplished in a shorter time in BOP

9  than in a longer.

10    In terms of deterrence, the most time he's done on any

11  of his previous cases was a 4-year state sentence, a sentence

12  for which he would have done far below those 4 years, when

13  compared to the lack of parole and relatively meager 15 percent

14  good time that he would get on any sentence you would impose.

15  So any sentence beyond the numerical 4 years -- and I would

16  submit, any sentence at or near the 5-year mark or on the lower

17  end of things is going to be a significant deterrence to him,

18  both given all that he loses as he spends more and more time in

19  jail, versus what he has built up, and also given his age.

20    And I think his age is important with respect to the

21  deterrence factor as well.  He's at a crossroads, at any number

22  of ways, but at a crossroads chronologically as well.  He's

23  almost 40 years old, and I think that serves to deter, looking

24  forward as well as back.

25    With respect to protecting the public, again, his

9

ATTACHMENT A

1    record over the last three years speaks towards the need to

2    protect the public and speaks towards there being less need

3    than in many cases of this kind.  Clearly, with respect to

4    punishing, a sentence -- number one, a sentence of BOP is

5    required here anyway; but, number two, a lower than guideline

6    sentence would, I submit, still be sufficient to achieve the

7    various ends of 3553 and sentencing in general.

8         Finally -- and this is not with respect to the amount

9    of time to be imposed, but, rather, where it be imposed -- he

10   would ask that you recommend placement if possible at F.C.I.

11   Englewood because of family considerations.

12        Thank you.

13        *THE COURT:*  Thank you.

14        Response.

15        *MR. TILL:*  Your Honor, the Government is asking for a

16   guideline sentence in this case, a sentence of 130 months

17   imprisonment.  As the presentence report indicates, he does

18   have a lengthy record, he has been subject to leniency in the

19   past, and he has not shown the kind of respect for the law that

20   is required in the judgment of the Government.  So we're asking

21   for 130 months in order to promote respect for the law and --

22   impose what the Government believes is a just punishment for an

23   offense like this, which includes selling crack cocaine in the

24   home where children are present and having a firearm there.  He

25   is a full-grown man.  He needs to be held accountable for what

1    he did.

2              That's the Government's position, Your Honor.

3              *THE COURT:*  Thank you.

4              Reply?

5              *MR. HARRIS:*  No rely, Your Honor.

6              *THE COURT:*  Thank you.

7              Then we'll go to allocution.  Is there further

8    argument with regard to the sentence to be imposed?

9              *MR. HARRIS:*  There is no further argument from me with

10   regard to the sentence.  I know Mr. Askew looks forward to

11   addressing the Court.

12             *THE COURT:*  Thank you.

13             Is there any further argument by the Government?

14             *MR. TILL:*  No, Your Honor.

15             *THE COURT:*  Thank you.

16             Mr. Askew, what would you like me to know?

17             *THE DEFENDANT:*  Well, I wrote some stuff down to let

18   you know about me a little bit.

19             Well, Your Honor, in my youth, up to my late 20s,

20   early 30s, I led a fast life, and I'm not proud of.  I broke

21   the law, and my behavior led to crimes I committed in March of

22   2009.  I take full responsibility for what I did, and I believe

23   I should -- I should suffer the legal consequences that result

24   from that act.

25             I would, however, humbly ask that you consider some

ATTACHMENT A

1   factors before you make your final decision as to the length of

2   my sentence.

3          I have custody of my son, and I have two daughters.

4   And one was born in 2007, after she grew to about 2 years old,

5   I realized that I would have to change my life-style.  In 2009,

6   I made a decision -- I made a decision to start that change,

7   and I gave up the whole drug scene.  I changed the type of

8   people I associated with and started a family of my own, with

9   April.  She has -- she has kids that -- she has kids too, three

10  boys, two girls, and a baby, that's added on to the kids she

11  got, and that's Gabrielle, that's my daughter by her.  April

12  and the kids were the center of my life, and I began to get

13  steady work and provide for my family.  I committed no more

14  crimes and was not ever arrested or accused of anything for

15  almost three years, until this Indictment.

16         And April has an illness that she can't work, and I

17  made -- I -- it made her disabled.  She has -- she's bipolar

18  and some other illness, that's all I know right there.  But I

19  helped her get through the illness and help her with the kids.

20  And I'm a different man now.  Money things are not important.

21  What is important is that I continue to be good -- a good man

22  and a productive citizen and a provider and a good example to

23  my wife and kids.

24         If you could show me some mercy and so -- show me a

25  lower sentence, I will still have time after I get out to

ATTACHMENT A

1   resume my role as a father and a husband.  I promise you, Your

2   Honor, that if you give me this chance, I will not blow it.

3   Thank you.

4           THE COURT:  Thank you.

5           Anything further?

6           MR. HARRIS:  No, Your Honor.

7           THE COURT:  Thank you.

8           Then before I announce the sentence I intend to

9   impose, I want to enter an order with regard to Docket No. 609.

10          Docket No. 609 has attached to it a number of letters

11  written by family members on behalf of Mr. Askew, and I'm going

12  to direct that these be restricted with a level 1 restriction.

13  They should have been sent to the probation officer and would

14  have then been attached to the presentence report and be

15  subject to the restriction.  But since they weren't, we can

16  accomplish exactly the same objectives by restricting them

17  here.

18          The reason I do that is not because I haven't

19  considered them, I have, and I've read each one of them.  It's

20  because the public records here are available to the public.

21  What that means is, they're available on the internet.  And I

22  want to be sure that those people who have written letters do

23  not suffer any adverse consequences because they did so.  And

24  therefore, I place those letters under restriction.

25          I'll announce the sentence I intend to impose.  And if

ATTACHMENT A

1   there is anything about my reasoning that catches counsel by

2   surprise or addresses an issue that you haven't had an

3   opportunity to address, I invite you to request a continuance.

4          Imposition of a sentence in a federal criminal case is

5   governed by a number of statutes.  But the umbrella statute for

6   sentencing is 18 U.S.C. Section 3553.

7          In imposing sentence in this case, as in every case,

8   I'm required to consider the objectives and the factors that

9   are set forth in that statute.  The statute requires that the

10  sentence be sufficient but not greater than necessary to

11  satisfy particular objectives; the sentence must reflect the

12  seriousness of the offense; promote respect for the law;

13  provide just punishment; adequately deter criminal conduct;

14  protect the public from further crimes by the defendant; and

15  provide the defendant with needed educational or vocational

16  training, medical care, or other correctional treatment in the

17  most effective manner.

18         To fashion a sentence that meets these objectives, the

19  statute tells me what factors to consider:  The nature and

20  circumstances of the offense, the history and characteristics

21  of the defendant, the kinds of sentences that are available,

22  the sentence prescribed by the federal sentencing guidelines,

23  the need to avoid unwarranted sentence disparities among

24  defendants with similar records found guilty of similar

25  conduct.

1    Now, at the beginning of this hearing I identified

2  those documents that I had studied in preparation for the

3  hearing, confirmed with counsel that they and Mr. Askew had had

4  an opportunity to review those, confirmed that there was no

5  dispute as to the factual contents of the presentence report

6  and no dispute as to the calculation of the sentence under the

7  federal sentencing guidelines.  That is where we start.  I also

8  confirmed that there was no additional documents that I should

9  be considering.

10    So turning to the calculation under the federal

11  sentencing guidelines, I find as follows:

12    There are two counts that Mr. Askew is being sentenced

13  for, possession with intent to distribute more than 28 grams of

14  crack cocaine and being a prohibited person in possession of a

15  firearm and aiding and abetting.

16    These two counts are grouped under the guidelines

17  pursuant to Section 3D1.2(c).  And pursuant to Section 3D1.3,

18  the offense guideline which produces the highest offense level

19  is used.  Thus, the guideline for Section 2D1.1 is applied

20  here.

21    The Base Offense Level for violation of 21 U.S.C.

22  Section 841(a)(1) and (b)(1)(B) is Section 2D1.1.  Because the

23  type and the amount of drugs involved was 28.167 grams of

24  cocaine base, the base offense level is 26.  Then there are two

25  additional levels added as specific offense characteristics

15

ATTACHMENT A

1   pursuant to Section 2D1.1(b)(1); this is because Mr. Askew

2   possessed a firearm.  There are two additional levels that are

3   added pursuant to Section 2D1.2(a)(1) because the offense took

4   place within 1,000 feet of a Denver Public School District

5   elementary school.  This results in an Adjusted Offense Level

6   of 30.

7          Then there is a downward adjustment for acceptance of

8   responsibility.  And Mr. Askew gets the maximum reduction for

9   acceptance of responsibility under the sentencing guidelines.

10  That is a three-level reduction, and it is imposed because the

11  provisions of Section 3E1.1(a) and (b) have been satisfied.  So

12  the Total Offense Level is 27.

13         The other component in calculating a sentence under

14  the federal sentencing guidelines is the calculation of

15  criminal history.  The total number of criminal history points

16  here is 14; and that puts Mr. Askew in the highest criminal

17  history category in the federal system, Category VI.

18         Now, that doesn't really summarize adequately, in my

19  view, the nature of the criminal history, because there are

20  multiple convictions for which no points have been assigned,

21  one occurring in 1994, '95, '96 -- actually, three in '96.

22  '97, two, three, in '97.  '98, the first time any points are

23  assigned is for a 1998 conviction of distribution of a Schedule

24  III controlled substance.  A conviction in 1998, which was a

25  driving conviction for which no points are assigned and a

ATTACHMENT A

1    domestic violence criminal mischief conviction for which no

2    points are assigned.  There is a theft conviction in 1998 for

3    which 2 points are assigned, but an operation of a motor

4    vehicle under restraint for which no points are assigned,

5    driving under financial suspension for which no points are

6    assigned.

7          Then in 1999 there is another conviction regarding

8    controlled substances.  Here, it's a 3-point conviction for

9    attempted conspiracy to possess a Schedule II controlled

10   substance.  And in 1999, another felony conviction with 3

11   points for driving after revocation.

12         But then in 2000, a conviction for trespass for which

13   no points are assigned and false information for which no

14   points are assigned.

15         In 2006, again, there is a conviction for possession

16   of a controlled substance for which 1 point is assigned.  And

17   at the time of the instant offense, the defendant was under a

18   criminal justice sentence in the 2006 cases, and that results

19   in an additional 2 points.

20         With a Criminal History Category of VI and an offense

21   level of 7, for Count 1, the guidelines recommend incarceration

22   of 130 to 162 months.  For Count 2, they recommend

23   incarceration of 120 months.  The supervised release term

24   recommended under the guidelines is 4 years on Count 1 and 1 to

25   3 years on Count 2.  He is not eligible for probation.  The

ATTACHMENT A

1    fine for these counts recommended under the guidelines is

2    $12,500 to $2,250,000.  And there is a special assessment of

3    $100 for each count.

4          There is no request for a departure under the

5    guidelines; but Mr. Askew has asked for what is called a

6    statutory sentence, or a variant sentence.  What that is, is a

7    request for a non-guideline sentence.  And in particular, he's

8    asked for a non-guideline sentence of 60 months of

9    incarceration, less than half of the time recommended under

10   Count -- on Count 2 and less than half of the time recommended

11   on Count 1.

12         The reasons that he has given for that is that he has

13   changed his behavior, that he's successfully participated in a

14   drug rehabilitation program, including a drug court, in 2009,

15   the same time that the instance offense occurred, and that

16   since then he has had no violations of the law.

17         The letters that have been submitted on his behalf

18   include comments by friends and relatives indicating that he

19   has changed his behavior.  He tells me that he understands that

20   he has obligations to his family and he has changed his outlook

21   as well as his behavior.

22         The Government opposes the imposition of a variant

23   sentence, noting that the two counts upon which he has been

24   convicted in this case are serious, that they reflect an

25   extended pattern of behavior over a long period of time, and

ATTACHMENT A

1   that he has garnered a significant criminal record.

2       From reviewing that criminal record, I note one fact

3   that no one has addressed, and that is that there have been

4   gaps in the criminal record of some significant time periods

5   before this where Mr. Askew was not involved in criminal

6   behavior.  And the greatest of these is between the year

7   2000 and 2006, a six-year period in which there were no

8   convictions.

9       Now, that's twice as long as the three-year period

10  that has passed since the behavior in 2009.  But the six-year

11  period was followed by a conviction for being in possession of

12  a controlled substance and then these charges for behavior in

13  2009, several things that are important to note in evaluating

14  the request for a variant sentence and for determining what

15  sentence is appropriate under the statute, 18 U.S.C. Section

16  3553.

17      The role of the Court in imposing sentence is not to

18  judge the person.  I'm not making a determination as to whether

19  Mr. Askew is a good person or not; I'm not deciding whether

20  he's a good father or not; I'm not deciding whether or not he

21  has good relationships with his family.  And it's apparent that

22  there are lots of people who love him and see his very fine

23  qualities.  This isn't about that.  This is about behavior,

24  about conduct, and about being responsible and accountable for

25  that conduct.

ATTACHMENT A

1    Therefore, I look at what conduct occurred and all of

2    the factors that the statute tells me to consider.  I'm not

3    free to grant mercy, because mercy has nothing to do with the

4    role of the Court in imposing sentence.  The sentence is

5    imposed to reflect the seriousness of the offense, to promote

6    respect for law, to deter criminal conduct, to protect the

7    public from further crimes by the defendant.

8    Now, I congratulate Mr. Askew on his three years of

9    sobriety.  It's a lot of work, it requires a real life-style

10   change, and he's done a good job insofar as the information in

11   the presentence report reveals.  But it doesn't change his

12   conduct.  It doesn't change the seriousness of the offense or

13   any of the objectives that the sentence is to serve, with the

14   exception of one.  And that is the need to protect the public

15   from further crimes by the defendant.

16   Because Mr. Askew has had an abatement of illegal

17   behavior for a period of six years before and then returned to

18   illegal behavior, the fact that he has been sober and

19   responsible and engaged in lawful behavior for a period of

20   three years I do not find to be persuasive as to the likelihood

21   of him continuing in a law-abiding life-style.  I see no reason

22   to reduce a sentence because of that thee-year period.  To me,

23   it reflects the consistency of the criminal record I see thus

24   far.  And as a consequence, I do not intend to impose a variant

25   sentence in this case.

ATTACHMENT A

1    Instead, I intend to impose, having considered the

2  sentencing factors and the sentencing objectives, the following

3  sentence:  A special assessment of $200, $100 for each count.

4  That's mandated by statute.  I do not intend to impose a fine

5  because I find that Mr. Askew lacks the ability to pay a fine.

6  On Count 1, I intend to impose a bottom-of-the-guideline

7  sentence of 130 months in prison.  And on Count 2, I intend to

8  impose a 120-month sentence of imprisonment, both terms of

9  imprisonment to run concurrently.  I intend to impose a

10  supervised release period of 4 years on Count 1 and 3 years on

11  Count 2.  But by operation of statute, these run concurrently

12  as well.

13    Is there any need for clarification, for further

14  explanation, or request for a continuance?

15    *MR. TILL:*  Not from the Government, Your Honor.

16    *MR. HARRIS:*  No, Your Honor.

17    Just one observation factually.  I believe that

18  through some period between 2000 and 2006, he was incarcerated

19  on a four-year sentence.  So to the extent that there was that

20  six-year gap in cases, some of it was during a period of

21  incarceration.  And I would maintain that a three-year period

22  is still significant.

23    *THE COURT:*  Thank you.

24    I'll treat that as a motion for reconsideration, but I

25  deny the reconsideration.  Even if Mr. Askew was incarcerated

21

ATTACHMENT A

1  for part of that period of time, he gets good credit for the

2  fact that he didn't engage in any other crime for the remainder

3  of that time.  And I still remain unconvinced that a period of

4  three years of sobriety justifies a variant sentence of less

5  than half of what the guideline requires.

6          Ms. Glover, would you escort the children out of the

7  courtroom.  And those of you who are emotionally upset, would

8  you please excuse yourselves from the courtroom as well.

9          Having considered the provisions of 18 U.S.C. Section

10  3553, both the sentencing objectives and the sentencing

11  factors, it is the judgment of the Court that the defendant,

12  George H. Askew, be committed to the custody of the Bureau of

13  Prisons to be imprisoned for a term of 130 months as to Count 1

14  and a term of 120 months as to Count 2, both counts to run

15  concurrently.

16          Upon release from imprisonment, he'll be placed on

17  supervised release for a term of 4 years on Count 1 and 3 years

18  on Count 2, both counts to run concurrently.

19          Within 72 hours of release from the custody of the

20  Bureau of Prisons, he'll report in person to the probation

21  office in the district to which he is released.  While on

22  supervised release, he'll not commit another federal, state, or

23  local crime.  He'll not possess a firearm as defined in 18

24  U.S.C. Section 921, and he'll comply with the standard

25  conditions that have been adopted by the Court.  He'll not

ATTACHMENT A

1   possess a controlled substance; he'll refrain from any unlawful

2   use of a controlled substance; he'll submit to at least one

3   drug test within 15 days of release on supervised release and

4   two periodic tests thereafter; he'll cooperate in the

5   collection of DNA as directed by the probation officer.

6           And there are special -- a special condition that I

7   will impose, because it is reasonably related to the factors

8   enumerated and 18 U.S.C. Section 3553 and 3583(d).  He will

9   participate in and successfully complete a program of testing

10  and/or treatment for substance abuse as required by the

11  probation officer until such time as he is released from the

12  program by the probation officer.  He'll abstain from the use

13  of alcohol or other intoxicants during the course of treatment.

14  And to the extent that he is able to and directed to by the

15  probation officer, he will pay for the cost of treatment.

16          No fine is imposed for the reasons specified.

17  However, the statute mandates the payment of a special

18  assessment of $200; and that is due and payable immediately.

19          Mr. Pluss -- Mr. Harris, there was a mention in the

20  presentence report that Mr. Askew would like to participate in

21  the RDAP program.  Do you wish a recommendation for that?

22          *MR. HARRIS:*  Yes, Your Honor.

23          *THE COURT:*  I would recommend that to the extent that

24  Mr. Askew is desirous of participating in the RDAP program,

25  that he be authorized to do so.  And with regard to the request

ATTACHMENT A

1    for an assignment or recommendation of assignment to F.C.I.

2    Englewood, I decline the request.  I do so for several reasons.

3         First of all, there is a belief among many defendants

4    and their families that if the Court recommends location at a

5    particular facility, that's likely to happen.  I have to tell

6    you, it's not.  In fact, in the situations where there are

7    recommendations by the Court, the Bureau of Prisons honors less

8    than 50 percent of the time.  So I do not wish to create any

9    expectation that a particular facility would be selected by the

10   Bureau of Prisons.

11        And, indeed, the Bureau of Prisons gets to select the

12   appropriate facility.  They do so based upon a number of

13   factors, and I have no doubt that Mr. Harris has explained

14   these to Mr. Askew.  But among them are included the proximity

15   to family and the proximity to small children.  I would

16   recommend to Mr. Askew that he be sure to express his

17   preference for that, if that is important to him.

18        In addition, there are differing rehabilitation

19   programs offered at different facilities.  And being advised of

20   those particular programs and which would be to Mr. Askew's

21   best interests may help drive the decision making as to what

22   facility he's signed to as well.

23        And finally, there are security concerns which may or

24   may not be applicable, given Mr. Askew's history and the nature

25   of this case.  This court is not privy to that, and therefore,

ATTACHMENT A

1  cannot make that assessment.  That is one of the primary

2  reasons why the Bureau of Prisons has the absolute discretion

3  to make the assignment that it does.

4          Mr. Askew, I advise you of your right to appeal this

5  sentence.  If you desire to appeal, a Notice of Appeal must be

6  filed with the Clerk of the Court within 14 days after entry of

7  judgment, or you lose your right to appeal.  Now, ordinarily,

8  Mr. Harris would file that Notice of Appeal for you.  But if

9  for some reason he's unable to or he's unwilling to do so and

10  you want to appeal, you may request and I will direct the Clerk

11  of the Court to file a Notice of Appeal on your behalf.

12          Is there any further business to bring before the

13  Court?

14          *MR. TILL:*  Not from the Government, Your Honor.

15          *MR. HARRIS:*  No, Your Honor.

16          *THE COURT:*  Thank you, then, Mr. Till.  Thank you,

17  Mr. Harris.  Thank you to our probation officer and our marshal

18  staff.  Mr. Askew will be remanded to the care and custody of

19  the United States Marshal.  And that will conclude this

20  hearing.

21          (Recess at 11:48 a.m.)

22

23

24

25

ATTACHMENT A

1                          REPORTER'S CERTIFICATE

2

3          I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

4

5          Dated at Denver, Colorado, this 18th day of September,

6    2012.

7                                    s/Therese Lindblom

8                          _____

9                          Therese Lindblom,CSR,RMR,CRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25