IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-CR-00010-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GEORGE H. ASKEW,

    Defendant.

_____

**REPORTER'S TRANSCRIPT**
(Hearing on Change of Plea)

_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 11:37 a.m., on the 11th day of June, 2012, in Courtroom A901, United States Courthouse, Denver, Colorado.

**APPEARANCES**

    GUY TILL, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the plaintiff.

    EDWARD HARRIS, Assistant Federal Public Defender, 633 17th Street, 10th Floor, Denver, Colorado, 80202, appearing for the defendant.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Paul Zuckerman, 901 19th Street, Room A259, Denver, Colorado, 80294, (303) 629-9285

1            **PROCEEDINGS**

2        (In open court at 11:39 a.m.)

3            *THE COURT:*  Please be seated.

4            The Court is convened today in Case No. 12-cr-10.

5    This is encaptioned the United States of America vs. George H.

6    Askew.  The matter is set down for a change in plea.

7            Could I have entries of appearance, please.

8            *MR. TILL:*  Good morning, your Honor.  Your Honor, I'm

9    Guy Till.  I'm an assistant U.S. attorney.  Also present at

10   counsel table to assist is ATF Special Agent Jason Cole.

11           *THE COURT:*  Good morning and welcome.

12           *MR. HARRIS:*  Good morning, your Honor.  Edward Harris

13   appearing on behalf of Mr. Askew.  Mr. Askew is present, seated

14   to my immediate left.

15           *THE COURT:*  Good morning and welcome.

16           Are you ready to proceed?

17           *MR. HARRIS:*  We are ready, your Honor.

18           *MR. TILL:*  Yes, your Honor.

19           *THE COURT:*  Thank you.

20           Mr. Harris, would you and Mr. Askew please approach

21   the lectern.

22           This matter is before the Court for a change in the

23   defendant's plea, for re-arraignment pursuant to Rule 10, and

24   for consideration of and advisement with regard to the parties'

25   plea agreement in accordance with Rule 11, both of the Federal

1    Rules of Criminal Procedure.

2            The record reflects that the defendant was first

3    charged in an indictment filed in this case on January 9, 2012.

4    He was charged in Counts 1, 2, 3, 4, and 32 of the indictment.

5            Mr. Till, has there been a superseding indictment

6    filed?

7            *MR. TILL:*  Your Honor, there has; but we are

8    proceeding on the indictment as to Mr. Askew, and we will ask

9    the Court to dismiss the superseding indictment as to

10   Mr. Askew, if the Court accepts his pleas.

11           *THE COURT:*  Thank you.

12           Mr. Askew entered a plea of not guilty to the charges

13   brought against him in the original indictment.  And I

14   understand that pursuant to the terms of a written plea

15   agreement, he now desires to change his plea with regard to

16   Count 1 and Count 2 of the indictment, entering a plea of

17   guilty to each count.  And in exchange for that, the Government

18   agrees to dismiss all remaining counts against him in the

19   initial indictment and the entirety of the superseding

20   indictment; is that correct?

21           *MR. TILL:*  That's correct, your Honor.

22           *THE COURT:*  Thank you.

23           Is that right?

24           *MR. HARRIS:*  Yes.

25           *THE COURT:*  Thank you.

 1          Mr. Till, would you please re-arraign.

 2          MR. TILL:  Yes, your Honor.

 3          Sir, are you the same George H. Askew who was indicted

 4   by the grand jury in this case?

 5          THE DEFENDANT:  Yes.

 6          MR. TILL:  Sir, in Count 1, the grand jury alleges

 7   that on or about March 17, 2009 within the State and District

 8   of Colorado, the defendant, George H. Askew, knowingly

 9   distributed and possessed with intent to distribute more than

10   28 grams of a substance and mixture containing a detectable

11   amount of cocaine base, also known as crack cocaine, a Schedule

12   II controlled substance, all in violation of Title 21 United

13   States Code Section 841(a)(1) and (b)(1)(B).

14          Sir, do you understand that charge?

15          THE DEFENDANT:  Yes.

16          MR. TILL:  Sir, how do you plead to that charge?  Do

17   you plead not guilty, or do you plead guilty?

18          THE DEFENDANT:  Guilty.

19          MR. TILL:  Sir, in Count 2, the grand jury alleged

20   that on or about March 17, 2009, within the State and District

21   of Colorado, the defendant, George H. Askew, knowingly

22   possessed a firearm which had been transported in interstate

23   commerce, having been convicted previously of a crime

24   punishable by imprisonment for a term exceeding one year, all

25   in violation of Title 18 United States Code sections 922(g)(1)

1    and 924(a)(2).

2             Sir, do you understand that charge?

3             *THE DEFENDANT:*  Yes.

4             *MR. TILL:*  Sir, today how do you plead to Count 2?  Do

5    you plead not guilty, or do you plead guilty?

6             *THE DEFENDANT:*  Guilty.

7             *MR. TILL:*  Thank you, sir.

8             *THE COURT:*  Thank you.

9             As of this moment, Mr. Askew, you're not bound by your

10   plea of guilty.  Indeed, you're not bound by these pleas until

11   I accept them.  You can change your mind at any time during

12   this hearing until I accept your pleas of guilty.

13            In order to accept these pleas, I have to be sure that

14   you understand the charges that have been brought against you;

15   that you understand your choices, and that you understand the

16   consequences that flow from those choices.  I have to be sure

17   that your decision to plead guilty is voluntary and you haven't

18   been pressured into this decision.  I have to be sure that

19   there is a factual basis to support your plea.

20            In addition, in the terms of this plea agreement, you

21   are waiving other constitutional and statutory rights.  And I

22   have to be sure that you understand those rights and that you

23   are voluntarily and intelligently waiving those.

24            Throughout this hearing, I want you to let me know if

25   there is anything you don't understand or if you have any

1    questions.  If you'd like to talk with Mr. Harris or ask him a

2    question at any time during the hearing, let me know and we'll

3    take a brief recess so that you can confer privately.

4           I begin by asking you a number of questions.  These

5    questions are not intended to trap, embarrass, insult, or

6    offend you.  The questions are important because your answers

7    are important.  It's your answers that I consider in

8    determining whether I can accept your plea of guilty or not.

9    Therefore, you must answer my questions truthfully and

10   completely.  Indeed, just like a witness, you take a solemn

11   oath promising to tell truth.  And if you don't, your answers

12   can be used against you if an action is brought against you for

13   false statement or perjury.

14          Do you understand?

15          *THE DEFENDANT:*  Yes.

16          *THE COURT:*  Do you want to proceed?

17          *THE DEFENDANT:*  Yes.

18          *THE COURT:*  Would you please administer the oath.

19          *THE COURTROOM DEPUTY:*  If you'd raise your right hand,

20   please.

21      (Defendant sworn.)

22          *THE COURTROOM DEPUTY:*  Thank you.

23                          **EXAMINATION**

24   *BY THE COURT:*

25   *Q.*  Mr. Askew, how old are you?

1    *A.*   39.

2    *Q.*   What level of school did you complete?

3    *A.*   11.

4    *Q.*   Do you have any difficulty reading or writing in English?

5    *A.*   No.

6    *Q.*   Within the last 24 hours, have you taken any medication?

7    *A.*   No.

8    *Q.*   Within the last 24 hours, have you used any drug?

9    *A.*   No.

10   *Q.*   Weren't last 24 hours, have you used any alcohol?

11   *A.*   No.

12   *Q.*   To the best of your knowledge, have you ever been diagnosed

13   with any form of mental illness?

14   *A.*   No.

15   *Q.*   Is there anything about the way you feel today physically

16   or emotionally that makes it hard for you to understand what is

17   happening?

18   *A.*   No.

19   *Q.*   Have you read and do you understand the charges against you

20   in the indictment?

21   *A.*   Yes.

22   *Q.*   Have you discussed them with Mr. Harris?

23   *A.*   Yes.

24   *Q.*   Have you asked him all the questions that you had about

25   them?

1    *A.*   Yes.

2    *Q.*   Has he answered all of your questions?

3    *A.*   Yes.

4    *Q.*   Are there any other questions you want to ask him?

5    *A.*   No.

6              *THE COURT:*   Thank you.

7              Mr. Harris, could you identify the plea agreement for

8    the record, please.

9              *MR. HARRIS:*   Court Exhibit No. 1, your Honor, is the

10   plea agreement.

11             *THE COURT:*   Thank you.

12   *BY THE COURT:*

13   *Q.*   Mr. Askew, please look at Court Exhibit No. 1.  It's in

14   front of you on the lectern.  Have you read this document?

15   *A.*   Yes.

16   *Q.*   Have you discussed it with Mr. Harris?

17   *A.*   Yes.

18   *Q.*   Have you asked him all the questions you had about it?

19   *A.*   Yes.

20   *Q.*   Has he answered all your questions?

21   *A.*   Yes.

22   *Q.*   There is a lot of legal language in this document.  Do you

23   understand what it says and what it means?

24   *A.*   Yes.

25   *Q.*   Does it reflect all of your agreement with the Government?

1    *A.*  Yes.

2    *Q.*  Did you sign it?

3    *A.*  Yes.

4    *Q.*  Would you look at the last page of the document.  Is that

5    your signature?

6    *A.*  Yes, it is.

7              *THE COURT:*  Thank you.

8              Mr. Harris, does Exhibit 1 also bear your signature?

9              *MR. HARRIS:*  It does, your Honor.

10             *THE COURT:*  And I'm assuming that you reviewed plea

11   agreement with Mr. Askew and answered all of his questions; is

12   that right?

13             *MR. HARRIS:*  Yes.

14             *THE COURT:*  Are you satisfied that he understands the

15   contents of Exhibit 1?

16             *MR. HARRIS:*  Yes, your Honor.

17             *THE COURT:*  Did you review the discovery in this case?

18             *MR. HARRIS:*  Yes.

19             *THE COURT:*  Did you -- does it comport with the facts

20   stated in Exhibit 1?

21             *MR. HARRIS:*  It does, your Honor.

22             *THE COURT:*  Thank you.

23             Mr. Till, does Exhibit 1 also bear your signature?

24             *MR. TILL:*  It does, your Honor.

25             *THE COURT:*  Thank you.

*BY THE COURT:*

*Q.*   Mr. Askew, in Exhibit 1 there is statement of the facts that the Government believes it could prove if this matter were to go to trial.  By entering into this agreement, you are admitting that these facts are true.  I'll treat them as true for purposes of considering your plea and also for purposes of sentencing.

Therefore, I'm going to ask Mr. Till to recite the facts that you have agreed to.  Listen closely to what he says, because when he finishes, I'm going to ask you if those facts are true, and you must tell me if you have any disagreement with the facts as recited by Mr. Till.  Do you understand?

*A.*   Yes.

THE COURT:  Thank you.

Mr. Till, would you please recite the facts to which the parties have agreed.

MR. TILL:  Yes, your Honor.

With regard to Count 1, on or about March 17, 2009, at 3701 East 29th Avenue, Denver, Colorado, in the State and District of Colorado, the defendant, George H. Askew, knowingly possessed a quantity, specifically 28.167 grams of a mixture and substance containing a detectable amount of cocaine base, also known as crack cocaine.  Mr. Askew possessed the crack cocaine with intent to distribute it.

The defendant did sell the 28.167 grams of said crack

1    cocaine for $850 in a law-enforcement-controlled transaction

2    with a confidential human source of information who was working

3    with federal agents, who monitored the transaction real-time.

4    Said transaction was audio- and video-recorded electronically.

5          The suspected crack cocaine was submitted to a

6    forensic laboratory for evaluation.  The forensic laboratory

7    evaluation was positive for cocaine base, and the net weight of

8    the cocaine base mixture and substance was 28.167 grams.

9          Cocaine base is a Schedule II controlled substance,

10   and the transaction took place within 1,000 feet of a Denver

11   public school elementary school building.

12         The factual basis for Count 2 was that having been

13   previously convicted in 2007, of possession of a controlled

14   substance, a Colorado state felony punishable by imprisonment

15   for more than one year, in Denver District Court Case

16   No. 2006-CR-003872 on or about March 17, 2009, at 3701 East

17   29th Avenue, Denver, Colorado, within the State and District of

18   Colorado, the defendant, George H. Askew, knowingly possessed a

19   Taurus 9-millimeter pistol which had moved in and affecting

20   interstate commerce, having been previously convicted of a

21   state felony punishable by a term exceeding one year, all in

22   violation of Title 18 United States Code Section 922(g), and

23   then the defendant possessed said pistol while meeting with the

24   ATF confidential human source of information and waiting on

25   delivery to completely the sale of crack cocaine charged in

1    Count 1.

2    *BY THE COURT:*

3    *Q.*  Mr. Askew, are these facts true?

4    *A.*  Yes.

5    *Q.*  Thank you.

6         Then let's talk a little bit about penalty.

7         For Count 1, the minimum mandatory penalty is five

8    years of imprisonment.  There is a maximum penalty of 40 years

9    of imprisonment, a fine of up to $2 million can be imposed, a

10   fine and a term of imprisonment can be imposed.

11        There is a mandatory term of supervised release which

12   follows after a term of imprisonment.  The mandatory term of

13   supervised release is four years, and there is a $100 special

14   assessment.

15        For Count 2, the maximum statutory penalty is 10 years

16   of imprisonment.  There is no minimum penalty.  A fine of up to

17   $250,000 can be imposed.  Both a term of imprisonment and a

18   fine can be imposed.  A term of supervised release of up to

19   three years following an term of imprisonment can be imposed.

20   There is a $100 special assessment fee.  These two penalties

21   can be made consecutive or concurrent.

22        With regard to supervised release, terms are always

23   concurrent.  That means there will be at least four years of

24   supervised release imposed in a sentence in this case.

25        Now, in the federal system, when we calculate a term

1    of incarceration, we don't calculate it in terms of years; we

2    calculate it in terms of months.   There is no automatic

3    reduction, there is no parole.   That means that every month

4    you're sentenced to serve, you will serve.

5          Now, there are a limited number of ways to reduce a

6    sentence.   Some of these you have given up in the terms of your

7    plea agreement.

8          First is through a motion brought by the Government

9    shortly after judgment is entered.

10         A second is through a successful appeal and

11   resentencing.   But in the terms of your plea agreement, you

12   have waived your right to appeal except in very limited

13   circumstances.   If you turn to page 2 of Exhibit 1, beginning

14   on the last line on that page and reading onto page 3, you will

15   see that you have given up your right to appeal unless the

16   sentence imposed exceeds the maximum penalty in the statute of

17   conviction, or the sentence is a result of a departure or a

18   variance above the applicable guideline range, or the offense

19   level is determined to be greater than 27.

20         With regard to other ways to reduce a sentence, you

21   have the ability to initiate a collateral attack pursuant to 28

22   U.S.C. Section 2255.   That is what we call a petition for writ

23   of *habeas corpus*, and it allows you to challenge in addition to

24   an appeal both the sentence and the judgment that's been

25   entered.   But you've waived those rights, too.

1          And if you turn to page 3 of your plea agreement,

2     Exhibit 1, you will see midway in the paragraph that begins on

3     page 2 and continues on page 3 that you have given up your

4     rights to a collateral attack except under very limited

5     circumstances, and that's if there is a retroactive change in

6     the applicable Sentencing Guidelines, or sentencing statute or

7     you assert that you've been denied constitutionally effective

8     assistance of counsel, or if you assert a claim of

9     prosecutorial misconduct.

10          Now, the only other limitation on these waivers is

11    that if the Government appeals the sentence that is imposed,

12    you are not bound by the waiver provisions.

13          So do you understand that you are giving up

14    substantial rights to appeal and challenge the judgment that is

15    entered in this case?

16    A.  Yes.

17    Q.  Now, the last way to reduce a sentence is in the discretion

18    of the Bureau of Prisons.  The Bureau of Prisons has discretion

19    to give you credit against your sentence for good time served,

20    but their discretion is limited to 54 days per year and limited

21    to the determination they make each year that you followed

22    their rules and regulations, so they can choose to give you

23    good time or not give you good time based on their own

24    discretion.

25          Now, after following a prison term, there is a term of

supervised release.  And here it will be mandatorily at least

four years long.  While you're on supervised release, you are

required to adhere to certain conditions that regulate your

behavior, telling you what you can and cannot do and what you

must and must not do.

In addition, you are required to report to and comply

with the directives of a probation officer who monitors your

behavior.  The expectation is you will follow all of the

conditions all of the time.  It's not good enough to just try

and it's not good enough to follow some conditions and not

follow other conditions.

The conditions fall into two categories, standard

conditions and special conditions.  Standard conditions apply

to all terms of supervised release, and there are lots of those

conditions.  I'm not going to recite all of those conditions,

but I'll bring three to your attention.  You should understand

there are many more.

You cannot commit any new crimes when you're on

supervised release, state, federal, or local.  You cannot use,

sell, or possess any illegal substances when you're on

supervised release.  And you cannot use, sell, or possess any

firearms while you're on supervised release.

Now, as I said, there are a host of other standard

conditions.

Then there are special conditions.  And special

1    conditions are unique to you and to your particular

2    circumstances.  They're usually designed to deal with issues

3    that have caused you a problem in the past.  So if you've used

4    drugs in the past, probably you're going to be required to

5    participate in a drug rehabilitation program and go through

6    periodic drug testing.  If you've abused alcohol in the past,

7    you likely will be required to go through an alcohol

8    rehabilitation program.  And if you have had mental health

9    issues or developmental health issues, you may be required to

10   have a mental health assessment and participate in mental

11   health treatment.  You may also be required to pay for all of

12   these programs as well.

13         Now, the important thing about all these conditions is

14   what I said at the beginning:  You're expected to adhere to all

15   of them, all of the time; and if you don't, the Government can

16   bring you back here to this courtroom or another courtroom and

17   ask to have your supervised release revoked.  And if it is

18   revoked, you can be sent back to prison for another term.

19         Do you understand?

20   A.  Yes.

21   Q.  Now, the penalty that will be imposed on these charges is

22   not just a function of the statutory penalty I referenced a few

23   minutes ago.  In deciding what penalty is appropriate, I have

24   to consider some other statutes.  And the most important of

25   those is 18 U.S.C. Section 3553.  That's the statute that

1    impacts every sentence imposed in the federal system.  And it

2    requires me to impose a sentence that meets particular

3    objectives.  So your sentence must promote respect for the law,

4    provide just punishment, adequately deter criminal conduct,

5    protect the public from further crimes by you, and provide you

6    with needed educational or vocational training, medical care,

7    or other correctional treatment in the most effective manner.

8           In order to fashion a sentence that meets these

9    objectives, this same statute tells me what factors I can

10   consider: the nature and circumstances of the offense, your

11   history and characteristics, the kinds of sentences that are

12   available, what the Federal Sentencing Guidelines would

13   require, the need to avoid unwarranted sentence disparities

14   among defendants with similar records found guilty of similar

15   conduct, and in the appropriate case the need for restitution.

16          Now, I know that your attorney and the Government's

17   attorney have calculated in Exhibit 1 how they think the

18   Federal Sentencing Guidelines will apply.  Essentially

19   beginning on page 8 of that document, there is an estimate of

20   what they think will be the calculation under the Federal

21   Sentencing Guidelines.  There are several things you need to

22   know about the calculations in Exhibit 1.  First of all,

23   they're not binding on the Court, meaning I don't have to

24   follow them.  There is no guaranteed sentence here.

25          Secondly, these calculations are not the calculations

1    I will be working from at the time of sentencing.  In fact, we

2    all will be working from another document, not Exhibit 1 in --

3    with regard to the sentencing.  We will be working from a

4    document called the presentence investigation report.  And that

5    report is prepared by a probation officer of the probation

6    office of the Court.  That report will be prepared between now

7    and the time of sentencing.

8            You and Mr. Harris meet with that probation officer,

9    and the officer will gather information from other sources.

10   You'll have an opportunity to object -- to review and object to

11   that report, if you think there is an error or a mistake in it.

12   And if the officer doesn't adequately address your concern,

13   then you will be able to raise the issue at the time of

14   sentencing.  But you should be aware that the calculation in

15   that report may not be the same as the calculation in

16   Exhibit 1.

17           And finally, you should understand that the

18   calculation under the guidelines is only one factor that I

19   consider in determining your sentence.  It's an important

20   factor, but it's not the only factor.  It's a starting point,

21   but it's not necessarily the ending point.  And that's because

22   the sentence I impose has to meet those sentencing objectives I

23   referred to a few minutes ago.

24           And if the calculation under the guidelines doesn't do

25   that, then I can impose a non-guideline sentence.  And a

1    non-guideline sentence is a sentence outside the guideline

2    range.  Sometimes people call that a variant sentence,

3    sometimes they call it a statutory sentence; but it all means

4    the same thing.  It's a sentence outside the guideline

5    calculated range.  And that means that the sentence can be

6    higher than the guideline range or lower than the guideline

7    range, whatever is necessary to meet those sentencing

8    objectives.

9          Now, your sentencing hearing will occur a number of

10   weeks from now.  And in the intervening time, this presentence

11   report I just described will be prepared.  Please don't be

12   confused by the title probation officer, which is the title of

13   the person who is preparing the report.  Has nothing to do with

14   the penalty to be imposed.

15         As I said, you'll have an opportunity to review that

16   report and to advise the probation officer if you think there

17   is any error or mistake in it.  And at the time of sentencing,

18   the attorneys will have an opportunity to argue about what

19   sentence is appropriate in this case.  They may argue about the

20   calculations in the presentence report or about whether a

21   guideline or a non-guideline sentence should be imposed or

22   where in the guideline range a sentence should be imposed or

23   other things like that.  You will have an opportunity to make a

24   statement, but no one other than your attorney may make a

25   statement on your behalf.  If there are other people who would

1    like to say good things about you, they may do so in a letter

2    which is written to the probation officer and included in the

3    presentence report.  Do not have them send the letters to me.

4    They should go to the probation officer so that they can be

5    included with the presentence report.

6           Do you understand the objectives and factors that I'll

7    be evaluating in determining your sentence?

8    A.   Yes.

9    Q.   Do you understand the minimum sentence that is required for

10   Count 1?

11   A.   Yes.

12   Q.   Do you understand the maximum sentence that can be imposed

13   on both counts?

14   A.   Yes.

15   Q.   Do you understand that these sentences can be consecutive

16   or concurrent?

17   A.   Yes.

18   Q.   Do you understand that the charges you're pleading guilty

19   to are felony charges?

20   A.   Yes.

21   Q.   Okay.  Do you understand that if I accept your pleas of

22   guilty, this may impact your civil rights, your right to vote,

23   hold public office, serve on a jury, possess a firearm, or

24   obtain any host of a number of licenses?

25   A.   Yes.

1   *Q.*  Do you understand that the sentence that is imposed may be

2   more severe than what has been calculated in Exhibit 1?

3   *A.*  Yes.

4   *Q.*  Do you understand that no matter what the sentence is, if I

5   accept your plea today, you won't be able to withdraw it at the

6   time of sentencing?

7   *A.*  Yes.

8   *Q.*  Do you have any questions about sentencing?

9   *A.*  No.

10          *THE COURT:*  Then Mr. Harris, could you identify the

11   statement in advance, please.

12          *MR. HARRIS:*  Court Exhibit No. 2 is the statement in

13   advance.

14          *THE COURT:*  Thank you.

15   *BY THE COURT:*

16   *Q.*  Mr. Askew, would you please turn to Court Exhibit 2.

17          Have you read this document?

18   *A.*  Yes.

19   *Q.*  Have you discussed it with Mr. Harris?

20   *A.*  Yes.

21   *Q.*  Have you asked him all the questions you had about it?

22   *A.*  Yes.

23   *Q.*  Has he answered your questions?

24   *A.*  Yes.

25   *Q.*  Are there any other questions you want to ask him about it?

1   *A.*   No.

2   *Q.*   Did you sign this document?

3   *A.*   Yes.

4   *Q.*   Would you look at the last page.

5        Is that your signature?

6   *A.*   Yes.

7   *Q.*   Let's go over the constitutional rights then that you have

8   given up today by making your plea of guilty.

9        Under the United States Constitution, you have a

10  number of rights and protections that you're relinquishing or

11  waiving today by making your plea of guilty.  First and

12  foremost, the Constitution guarantees to you the right to have

13  a jury trial to determine the charges against you.  Now,

14  ordinarily, that trial would take place in this courtroom.  A

15  jury would sit to my left.  12 people would serve on the jury.

16  You and your attorney would participate, as would the

17  Government attorney, in selecting the people who would serve on

18  that jury.

19        Both you and the Government could excuse any potential

20  juror who could not be fair and impartial or who was unwilling

21  or unable to follow the law.  In addition, you could excuse up

22  to ten people without giving any reason whatsoever, and the

23  Government could excuse six people.

24        Now, once a jury is configured, all 12 people on the

25  jury take a solemn oath promising to consider only the evidence

1    presented here in the courtroom and to follow the instructions

2    that they receive as to the law.  One of the instructions I

3    give them tells them that in order to convict you, they must

4    unanimously find that the Government has established every

5    element of the charge brought against you beyond a reasonable

6    doubt.

7           Now, in Exhibit 1, the elements of these charges are

8    set out.  And so in order to be convicted, the Government would

9    have to prove every one of those beyond a reasonable doubt.

10          Now, if any of the jurors had a reasonable doubt as to

11   your guilt on either of the charges, you could not be

12   convicted.

13          You have a couple of other constitutional rights in

14   the trial process that are important as well.  You have the

15   right to remain silent.  That means nobody can compel you to

16   answer any questions.  You're never compelled to testify.  The

17   jury can't consider your silence in determining whether

18   Government has proven the charge or charges against you.  And

19   your attorney gets to cross-examine all of the witnesses and

20   oppose the evidence presented by the Government and argue to

21   the jury, even though you don't say anything.

22          You can waive that right either before or after the

23   trial begins.  You can testify if you want to.  You can call

24   evidence -- call witnesses to come and testify on your behalf.

25   And if they're reluctant to do so, I compel them to come

1    forward and testify.  And you can admit other evidence as you

2    think is appropriate.

3            Now, you also have a constitutional right to be

4    represented by counsel during the trial.  And here, Mr. Harris

5    has been fulfilling that duty in his capacity as a public

6    defender.  That arises because you have a constitutional right

7    to have counsel and, where you can't afford counsel, to have

8    counsel appointed to represent you without any cost to you.

9            Now, I know that he has represented you in negotiation

10   of this plea agreement; but I can assure you that if you would

11   prefer to go to trial, Mr. Harris would represent you ably and

12   well at the time of trial.  And if you went to trial and you

13   were convicted, you could appeal from your conviction and from

14   your sentence.  But today, by entering into this plea

15   agreement, you're giving up your right to a jury trial, all the

16   constitutional rights that go with it and your right to appeal

17   both from your conviction and under -- except under very

18   limited circumstances from your sentence.

19           Do you understand that you're waiving your right to a

20   jury trial and all the constitutional rights I've described?

21   A.   Yes.

22   Q.   Is that what you want to do?

23   A.   Yes.

24   Q.   Where are you currently being housed?

25   A.   FDC, the Federal Detention Center.

1    *Q.*  Have you been treated all right?

2    *A.*  Yes.

3    *Q.*  Has anybody pressured you to make this plea today?

4           And before you respond, let me define "anybody" for

5    you.  I really mean anybody.  That includes family, friends,

6    neighbors, strangers, enemies, colleagues, business associates,

7    folks at the institution where you have been housed or are

8    currently being housed, whether they're law enforcement or

9    they're other detainees, folks here at the courthouse, folks

10   who have transported you, the attorneys, court staff.  Has

11   anybody pressured you to enter this plea today?

12   *A.*  No.

13   *Q.*  Has anybody promised you something that isn't in the plea

14   agreement?

15   *A.*  No.

16   *Q.*  Have you had enough time to review and consider and discuss

17   your plea and plea agreement with Mr. Harris?

18   *A.*  Yes.

19   *Q.*  Are you satisfied with him as your attorney?

20   *A.*  Yes.

21   *Q.*  Do you have any concerns, complaints, or criticism about

22   the legal representation you've received?

23   *A.*  No.

24   *Q.*  Do you want to ask him any questions?

25   *A.*  No.

1    *Q.*  Do you have any questions for me?

2    *A.*  No.

3    *Q.*  Well, then now is the time to finalize your decision.  This

4    plea and plea agreement, Exhibit 1, the document we've been

5    discussing:  Do you still want to proceed with it?

6    *A.*  Yes.

7    *Q.*  You still want to enter a plea of guilty to Count 1 and

8    Count 2?

9    *A.*  Yes.

10         *THE COURT:*  Mr. Till, the Government anticipates in

11   exchange for this plea of guilty that it will dismiss the

12   remaining counts against Mr. Askew in the original indictment

13   and all the counts if the superseding indictment.  Would you

14   make your motion.

15         *MR. TILL:*  Yes, your Honor.  At this time I would like

16   to make the oral motion to dismiss the remaining counts in the

17   indictment, which I believe would be Count 3 and Count 4 and

18   Count 32 and all of the counts in the superseding indictment as

19   to Mr. Askew.

20         *THE COURT:*  Thank you.

21         And do the remaining charges, 1 and 2 in the original

22   indictment, reflect the seriousness of the actual offense

23   behavior?

24         *MR. TILL:*  Yes, your Honor, they do.

25         *THE COURT:*  And if I were to accept this agreement,

1    would the statutory purposes of sentencing be undermined in any

2    fashion?

3             MR. TILL:  No, your Honor, they would not.

4             THE COURT:  I assume there is no opposition to the

5    motion.

6             MR. HARRIS:  No opposition, your Honor.

7             THE COURT:  Mr. Harris, any reason not to accept the

8    plea and plea agreement?

9             MR. HARRIS:  No reason, your Honor.

10            THE COURT:  Mr. Till?

11            MR. TILL:  No reason, your Honor.

12            THE COURT:  Anything you want to say to supplement the

13   record?  Mr. Till?

14            MR. TILL:  Your Honor, nothing.

15            MR. HARRIS:  No, your Honor.

16            THE COURT:  Thank you.

17            Then based on the record made in open court today in

18   Case No. 12-cr-10, encaptioned for purposes of this hearing as

19   the United States of America vs. George H. Askew, I hereby find

20   that the defendant is fully competent to enter an informed

21   plea.  He's been represented through the course of this case

22   and this proceeding, and he has no objection, criticism, or

23   complaint as to representation he's received.  He's aware of

24   the nature of the charges against him and the consequences of

25   his plea of guilty.  He has knowingly and voluntarily waived

1    fundamental constitutional rights, including his right to a

2    jury trial and limitations on his right to appeal or

3    collaterally attack the judgment.  He understands that the

4    penalty to be imposed will be based on the facts stated in the

5    plea agreement and that the penalty may exceed the calculations

6    in the plea agreement.  His plea of guilty is voluntarily and

7    knowingly made, and the charge and plea is supported by an

8    independent basis in fact.  Good cause exists to grant the

9    Government's motion to dismiss Counts 3, 4, and 32 in the

10   original indictment and all counts in the superseding

11   indictment.

12        It is therefore ordered that Court Exhibits 1 and 2

13   are received, the plea as made in open court today is accepted,

14   and the defendant adjudged guilty as charged in Counts 1 and 2

15   of the original indictment found at Docket No. 1.

16        The Government's motion to dismiss Counts 3 and 4 and

17   32 of that document -- of that indictment is granted, as is the

18   request to dismiss all charges in the superseding indictment;

19   however, the Court stays the effect of this order until time of

20   sentencing.

21        The probation department will conduct a presentence

22   investigation and submit a presentence report as required by

23   Rule 32.  And the defendant, with the assistance of counsel,

24   will participate in that investigation and cooperate fully with

25   the probation department.

1          Sentencing has been set for September 18 at 11:00 a.m.

2     Is that still a good time for everyone?

3          MR. TILL:  Yes, your Honor, it is.

4          MR. HARRIS:  Yes, it is.

5          THE COURT:  Thank you.

6          Trial with regard to the charges against Mr. Askew was

7     vacated upon the filing of the notice of disposition.

8          There are pending motions.  I'm seeing two motions,

9     Docket No. 182, a motion to exclude four months from the Speedy

10    Trial Act calculations, and Document No. 458, a motion for writ

11    of habeas corpus ad testificandum by the United States.

12         MR. TILL:  Your Honor, we do still need the writ for

13    other defendants who are still set for trial, but I'm not sure

14    about the order to exclude time.

15         THE COURT:  Okay.  Well, that order was or that motion

16    was brought by the defendant.  Mr. Harris?

17         MR. HARRIS:  With respect to that motion, we would

18    withdraw it or request that it be withdrawn.  It is moot.

19         THE COURT:  All right.  Then Docket No. 182 will be

20    withdrawn as moot.

21         Docket No. 458 will be denied as to George H. Askew

22    and reserved as to all other defendants.

23         MR. TILL:  Thank you, your Honor.

24         THE COURT:  Is there anything further we need to deal

25    with today?

 1          MR. TILL:  No, your Honor, I don't think so.

 2          MR. HARRIS:  No.

 3          THE COURT:  Then that will complete our hearing.

 4   Mr. Askew will be remanded to the care and custody of the

 5   United States Marshal's Service pending sentencing.

 6          Thank you, Counsel.  Thank you to our court staff and

 7   marshal's staff.  That will complete our hearing.  We'll stand

 8   in recess.

 9      (Recess at 12:18 p.m.)

10                          *   *   *   *   *

11                      **REPORTER'S CERTIFICATE**

12      I certify that the foregoing is a correct transcript from

13   the record of proceedings in the above-entitled matter.  Dated

14   at Denver, Colorado, this 20th day of August, 2013.

15

16                                  *S/Paul A. Zuckerman*
                                    Paul A. Zuckerman
17

18

19

20

21

22

23

24

25